IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**RONALD RODGERS (# 14902)**                                                              **PLAINTIFF**

**v.**                          **No. 4:06CV37-D-B**

**CORRECTIONAL MEDICAL SERVICES**
**DR. JOHN BEARRY, MEDICAL DIRECTOR**                               **DEFENDANTS**

**MEMORANDUM OPINION**

      This matter comes before the court on the *pro se* prisoner complaint of Ronald Rodgers, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff filed this action in the Circuit Court of Sunflower County, Mississippi, alleging that defendants Dr. Bearry and Correctional Medical Services ("CMS") acted with deliberate indifference by denying him needed medical care for his shoulder. On March 10, 2006, the defendants removed the action to federal court, claiming federal jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

      The defendants have moved for summary judgment. The plaintiff has not responded, and the deadline for response has expired. For the reasons set forth below, the defendants' motion for summary judgment shall be granted, and judgment shall be entered for the defendants.

**Summary Judgment Standard**

      Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d

427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**[1]

In his complaint, the plaintiff acknowledges that he was treated for his right shoulder arthritis and that he had arthroscopic surgery by Dr. McCarthy on his right shoulder joint. the plaintiff's only basis for his claim of denial of medical care is his belief that he needs right shoulder replacement surgery. (Ex. 1 at IV). The plaintiff is serving a twenty-year sentence for armed robbery and is currently incarcerated at the Mississippi State Penitentiary at Parchman. (Ex. 3).

At the time relevant to the plaintiff's claim, Dr. Bearry was employed by CMS and was serving as Medical Director of the Mississippi State Penitentiary at Parchman. (Ex. 2 at ¶ 1). Dr. Thomas M. Lehman is currently the medical director. (Ex. 2 at ¶ 1). The plaintiff filed his complaint on January 23, 2006. The 248 pages of medical records attached to Dr. Thomas M. Lehman's affidavit cover the period from October, 2004 to May 2006. (Ex. 2 at ¶ 6).

The plaintiff was diagnosed on October 8, 2004, with osteoarthritis in the right shoulder joint. (Ex. 2 at ¶¶ 8-9). He was admitted to the hospital on three occasions for pain management between October 2004 and March 2005. On October 26, 2004, Dr. Santos admitted the plaintiff to the Mississippi Department of Corrections ("MDOC") infirmary under a diagnosis of peripheral neuropathy (nerve damage causing significant pain, usually to the feet and legs), and he was discharged November 16, 2004, (Ex. 2 at ¶ 10). Dr. Kim admitted the plaintiff to the

---

[1]The facts set forth in this section have been taken from the defendants' memorandum in support of the instant motion for summary judgment. The exhibits referenced are attached to the motion for summary judgment itself.

MDOC infirmary on December 8, 2004, for pain management under a diagnosis of neuropathy in both legs, and the plaintiff was discharged January 7, 2005. (Ex. 2 at ¶ 11). On February 22, 2005, the plaintiff was admitted to the MDOC infirmary for pain management caused by severe neuropathy and was discharged on March 4, 2005. (Ex. 2 at ¶ 12).

On March 9, 2005, the plaintiff was seen by orthopaedic surgeon Dr. Gary McCarthy at Central Mississippi Orthopaedics in Jackson, Mississippi. Dr. McCarthy's physical examination showed that the plaintiff had only 90 degrees of flexion/abduction and positive impingement in his shoulder. An MRI was taken – and showed severe glenohumeral joint arthritis with loose body and a large joint effusion. Dr. McCarthy's impression was that the plaintiff had osteoarthritis of the shoulder with loose body; Dr. McCarthy recommended arthroscopy with debridement and removal of loose body. (Ex. 2 at ¶ 13).

On April 12, 2005, Dr. McCarthy performed a right shoulder arthroscopy with debridement and removal of foreign body at the Central Mississippi Medical Center Hospital in Jackson, Mississippi. (Ex. 2 at ¶ 15; Ex. 4). Upon return to MSP, the plaintiff was hospitalized in the MDOC infirmary from April 12 to April 27, 2005, to recover from the surgery and for management of pain caused by peripheral neuropathy. (Ex. 2 at ¶ 16). The surgery wound healed; Dr. Santos, finding that the shoulder had some stiffness, referred the plaintiff to physical therapy and prescribed no heavy lifting or active exercise. (Ex. 2 at ¶ 16).

The plaintiff returned to Dr. McCarthy on April 26, 2005, for a post-surgery checkup. Dr. McCarthy found that the plaintiff's wounds were healed and that the plaintiff was still experiencing pain as well as decreased range of motion in his shoulder. Dr. McCarthy concluded that the plaintiff may need some analgesics for reduction or elimination of pain. He showed the

plaintiff some exercises and stated that he may end up needing a total shoulder replacement. (Ex. 2 at ¶ 17).

After the plaintiff complained to Dr. Bearry about his shoulder on May 4, 2005, he admitted the plaintiff to the MDOC infirmary the next day for pain management due to neuropathy – and for the decrease in the range in motion of the plaintiff's right shoulder; the plaintiff was discharged on Mary 12, 2005. (Ex. 2 at ¶ 19). During this hospitalization, the plaintiff refused to attend physical therapy on May 10, and after his discharge, he refused physical therapy on May 17, and May 19, 2005. (Ex. 2 at ¶ 20). The physical therapist recommended that the plaintiff be discharged from physical therapy for his non-compliance. (Ex. 2 at ¶ 20).

On June 21, 2005, the plaintiff told the examining physician that he was fine. (Ex. 2 at ¶ 21). Dr. Bearry's examination of the shoulder on June 24, 2005. showed that it was tender to palpation and that his shoulder range of motion was limited to 60%; Dr. Bearry gave Rodgers Medrol (80 mg). (Ex. 2 at ¶ 22).

On June 24 and June 26, 2005, RN Marshall observed Rodgers and another inmate lifting weights – during which the plaintiff exhibited no distress or facial grimacing and appeared to have no limited range of motion in his shoulder. On June 29, 2005 RN Marshall asked the plaintiff how he could lift weights without any limitation when he had previously told Dr. Bearry that he could not use his right shoulder to its fullest extent. The plaintiff became agitated and told RN Marshall that he was exercising because Dr. Bearry had recommended that he do so. (Ex. 2 at ¶¶ 23,24).

The plaintiff was examined on July 26, August 29,l and September 15, 2005 for his complaints of pain to his shoulder and neuropathic pain to his feet. Based on those examinations and the reports from RN Marshall, Dr. Bearry concluded that Rodgers was a malingerer and a drug seeker and should have no other medications and should not be given an orthopaedic referral. (Ex. 2 at ¶¶ 25-27).

After the plaintiff initially refused to have his shoulder x-rayed on December 7, 2005, an x-ray was taken on December 15, 2005, which showed good range of motion in the joint with degenerative changes of moderate degree at the AC joint and a severe degree at the shoulder joint with observable spurs seen on the x-ray. (Ex. 2 at ¶¶ 28, 30).

During an examination by nurse Marshall on December 29, 2005, the plaintiff admitted that he had been lifting weights to keep his shoulder mobile, but during an examination on January 24, 2006, he denied to Dr. Bearry that he had been lifting weights. (Ex. 2 at ¶¶ 32, 34).

On April 11, 2006, Dr. Bearry examined the plaintiff for his complaints about pain to his lower neck and right shoulder. The plaintiff told Dr. Bearry that many years ago he had been dragged by a car. Although the plaintiff previously had been deceptive about his condition and pain, Dr. Bearry, on May 1, 2006, referred the plaintiff for an orthopaedic consultation. (Ex. 2 at ¶¶ 35, 36).

Dr. Ramsue deferred the request for an orthopaedic consultation, instead recommending that the plaintiff have 12 weeks of physical therapy and, if no improvement occurred, Dr. Bearry could resubmit the request. (Ex. 2 at ¶ 37). On May 19, 2006, the physical therapist met with the plaintiff, developed a plan with specified goals, and conducted the first physical therapy session. The plan included physical therapy, heat and cold modalities, therapeutic exercises, and home

exercise program education. The goal was to increase the range of motion to about 75% to 80% of normal. The plaintiff told the therapist that he lifted weights but avoided lifting involving extreme shoulder flexion. (Ex. 2 at ¶ 39).

The plaintiff refused physical therapy on May 24, May 26 and June 6, 2006. (Ex. 2 at ¶ 40). The physical therapist recommended therapy be discontinued, and Dr. Bearry approved the recommendation – ending the therapy on June 14, 2006. (Ex. 2 at ¶ 41). Dr. Bearry examined the plaintiff's shoulder on July 5 and July 20, 2006, and found that his shoulder was stable – but tender with a decrease in range of motion. (Ex. 2 at ¶¶ 42,44). RN Marshall observed the plaintiff lifting weights again on August 1, 2006, and was told by a corrections officer that the plaintiff lifted weights every day the officer was on duty. (Ex. 2 at ¶ 45). On August 24, 2006, Dr. Bearry submitted a request for an orthopaedic consultation for the purpose of ruling out rotator cuff tear. As of the filing of the defendants' motion for summary judgment on December 5, 2006, no response had been made to the request. (Ex. 2 at ¶ 46).

**Denial of Medical Treatment**

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor

may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

The plaintiff's claim that he has been denied medical treatment for his arthritis is meritless. His voluminous medical record contains many entries regarding his treatment; he was examined several times, x-rayed, prescribed medications and physical therapy, and referred for an orthopaedic examination. He finally underwent arthroscopic surgery. After surgery, the defendants prescribed painkillers, anti-inflammatories, and physical therapy. The plaintiff refused to cooperate in his treatment by repeatedly declining to attend his physical therapy sessions. Instead, the plaintiff has – without medical proof or justification – demanded shoulder replacement surgery. The plaintiff's doctor told him that shoulder replacement surgery was an option if lesser measures failed. The plaintiff has not cooperated with the conduct of lesser measures and obviously disagrees with such treatment. As discussed above, his mere disagreement with the treatment provided is not a basis for recovery under 42 U.S.C. § 1983. As

such, the instant case shall be dismissed for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 15th day of February, 2007.

      /s/ Glen H. Davidson
CHIEF JUDGE